The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention for the court is now sitting. God save the United States and this honorable court. Good afternoon. We're happy to have you before us, even if it is virtually. And we're happy to hear argument in our first case, Bryant v. Woodall. Mr. Wood? Good afternoon, Your Honor. May it please the court, I am Michael Wood. I'm an attorney with the North Carolina Department of Justice. It's my pleasure to be here today. Thank you for hearing the state's argument. This is a case without a controversy. And it raises important issues about Article Three standing in the federal courts. Plaintiffs have never been charged with the state law that they purport to challenge here. There's been no criminal, no civil, no administrative action against plaintiffs, nor have they been threatened with any such action ever. Those facts are undisputed. Nor in the 45 year history since this 1973 statute went into place, has the state ever charged anybody in the state of North Carolina under this provision. On top of that, on this record, we have two disavowals by the two district attorneys named as defendants in this case, where they both say we will not prosecute under this statute. Against all of that undisputed factual background, the district court concluded that the plaintiffs did meet their burden to demonstrate Article Three standing by showing that there was a prosecution. Can I ask you, I take all the facts that you just said, and maybe they're a little bit more nuanced than you put them forth, but you know, you're an advocate. Why are you defending the suit, if not to preserve the opportunity to enforce the statute? Your Honor, we are defending the suit. You're sorry? We are defending the law. Why are you doing that? For the reason, that Article Three standing is important. And below at the district court and here on appeal, the state maintains that Article Three standing is a very important concept and should be respected. I represented the state of Maryland for a long time. And when we weren't interested in defending a suit, we would confess error. That would be it. That's what the Department of Justice does. And so, what I'm wondering is, it would seem to me the only reason why you would defend the lawsuit, and I'm sure you don't go around trying to find constitutional issues or make constitutional law, is because you want to preserve for the state the opportunity to enforce this statute. Is that wrong? That certainly could be one reason. I agree, Your Honor. But another independent reason is we respect Article Three, and we think that limits on jurisdiction are also important and should be defended. Yeah, but that would be respected if you confessed error. There wouldn't be any suit then, right? So, Your Honor, the litigation decision in this case was to invoke Article Three standing and press that defense here in the state's defense of this statute. That's the issue that we think is important. I understand what the issue is. I'm trying to ask what the reason for it is. And your entire submission has been, we have not and we will not enforce this statute. So, why are you here defending it? Well, Your Honor, as an employee with the Department of Justice, our job is to defend state law. This is valid state law on the three, among other things. And a person could be held to have violated this law, which has been enforced all this time, right? It is possible, although it hasn't happened, that this law could be enforced someday in the future. That's absolutely right, Your Honor. Okay. And so let me turn first to the two... Mr. Ward, can I ask a follow-up? I guess it's not entirely related, but you began with a discussion of the statute and the history and you indicated the long history of the statute and its non-enforcement. And I will grant you that that's not completely irrelevant, but isn't the more relevant period of time the time, the more recent history when the legislature actively chose to amend the statute, to change the definition of what the medical exception would be to a true medical emergency? And I mean, I assume, I would hope you would agree that legislatures don't go about modifying or amending statutes if they have no intent on their being enforced. So why shouldn't we take the legislature at its word here? Your Honor, the answer to that is the 2016 amendment was to a different exception than the one the plaintiffs have sued under. And so the structure of the law is the starting point there. As a general rule under North Carolina law, abortions are illegal. And then there are two modified exceptions to that general law. Exception A is, in the first 20 weeks, abortions shall not be illegal as long as conditions are followed. And a separate freestanding parallel exception is B. And B says, after the 20th week, abortions shall not be illegal if the following conditions are are met. B is the medical exception. B is the only one that was amended in 2016 by the General Assembly. Critically, plaintiffs didn't sue under B. Plaintiffs did not bring their claim under B. Right in the plaintiff's complaint, it's clear in record page 24, paragraph 21 of the complaint, that they, plaintiffs said, both before and after the 2016 amendment, exception A was unconstitutional. So the change between 2015 and 2016, which the district court focused very heavily on, and we contend in error, that's not material to the state's intent or lack of intent to suddenly start enforcing exception A. Can I ask, counsel, can I follow up on Judge Diaz's question? We, the cases talk about the import of amendment and use the word intent, right? And they, of course, seem to say that where a legislature amends a law, it shows an intent that the executive enforces, some legislative intent. And that seems to be the stated reason. But really, it seems to me to go more to the sort of political valence of the issue, right? That the amendment is not about intent, so much as showing that this is not a morbid issue, right? This is not an issue that is dead and gone, you know, as we might have thought about in Poe or some of the other cases, but instead is an issue that is live. And yes, they didn't amend this exception, but the fact that they're legislating and seeking involvement around a different exception, and frankly, the fact that other states are passing other laws that are related in this area, suggest that this is a political issue that is quite lively. And all of that seems to me to suggest that a threat of prosecution is more credible, maybe not credible enough, but why don't we think about the amendment less specifically than you're discussing about intent and use it as a way to think about sort of the valence of the issue that we're facing? I think to answer your Honor's question, I would say this. I have no problem agreeing that an amendment to exception B shows that the General Assembly passed an emergency exception and wanted to spend its legislative energy to change that law. And I even can say that that would indicate to me, and the case law indicates that the General Assembly acted for some reason, there must be some intention there with respect to B. But I really do think it's a logical leap to read from that effort on one part of the statute, on one exception, to then ascribe that there's a change of mind or a new intention, a renewed intention on the one that was sued under in this case. I don't think that follows. I'm agreeing with that, right? I don't think it says much about the legislator's intent with respect to the 20-week ban, but what it does sort of highlight is that this is a live political issue, right? That this is an issue that this being the regulation of abortion at and around these times and the manners in which it's done, that those are very much live issues, right? They're not like Poe or Judge Wilkins' opinion where he talked about a statute being on the books out of historical oddities, right? These are very much live issues. And that's what the amendment seems to say to me more than some amorphous and undefined legislative intent. Why didn't it tell us that? I don't know. So there can be no prosecution under... There would be separate prosecutions under Exception A and Exception B, right? They're freestanding, they're separate. So I don't know that I can follow Your Honor's logic to say making any change to any portion of the abortion regulations therefore shows a renewed interest generally in reviving the state's prosecutions of the abortion laws. I don't think that that's a conclusion I can reach. I do think that the district court agreed with what you're saying and saw it as a unified whole and agreed that by amending one portion, that necessarily is intertwined with the rest of it. But the cases that have been cited just don't support that. Many of the cases showed... I'm sorry, Judge? No, I was just going to say, I think you are maybe intentionally, but in any event, sort of missing the point that my colleague made. But be that as it may, we have together amended more recent amendments to persistent parts of the statute. You talked about the district attorney said that they didn't intend to enforce the ban. Well, those lack of intent letters are pretty... I'm having difficulty hearing you, and so I suspect... I'm sorry. What I was saying is I wasn't sure that he directly answered your question. But to go to another question, I thought that he made the point that the prosecutors had indicated that they weren't going to enforce this. I think that their indication that they weren't going to enforce it was pretty thin. I have no intent at this moment, and they're in emails. It's no formal letter from the government saying, we do not intend to enforce this statute, is it? No, that's absolutely right, Your Honor. It's not binding. It's not formal. It's not promulgated. It's not even saying that tomorrow they're not going to change their mind. It just says at this moment. I agree, Your Honor. And I would further state that district attorneys in North Carolina would not be able to bind their successor in office to hold a certain position. Well, it doesn't say that either. It doesn't say as long as I'm in office. Okay. Well, I mean, in the brief, we quibbled a little bit, the difference between a present intention and I won't initiate. I mean, those words are different, and I guess- Excuse me. Maybe I'm not remembering correctly. I thought one of these responses was an email which said something like, I have no present intention or something like that. Is that wrong? No, you're remembering correctly, Your Honor. In the record 89 to 895, District Attorney Woodall said, I have no present intention to initiate prosecutions. So present intention to initiate is also forward-looking. Can you put that in the framework of North Carolina right to life and Judge Diaz's opinion, maybe it's Judge Michael's opinion, talking about you need something more formal, right? I mean, North Carolina right to life said, we don't just take somebody's word on it, right? If the statute is clear, some amorphous statement just isn't sufficient. So how do we use what you're relying on in light of North Carolina right to life? So the cases including North Carolina right to life do say it doesn't have to take any particular form when we look at the District Attorney's disavowal. Yes, there's a continuum. Yes, something that's formal and promulgated and a handwritten note would be at the other end of the spectrum, perhaps. So what you need to, the fact that these were emails from the District Attorney to the attorney handling this case and put into the record, that is something that the District Court should give the appropriate weight to. However, I would say this, Your Honor, the cases do not say that the District Attorneys have to give a guarantee for all time going forward, that they will never change their position. I don't think that's a correct reading of the right to life case or the EQ2 case either. So the question is, what weight should that disavowal be given? And here the state submits when there's a 45 year history of never enforcing exception A or B, and the District Attorneys, if the question is, is there a credible threat of immediate prosecution? These two statements speak directly to that issue. It's plaintiffs... Mr. Wood, can I ask a separate question related to that and the credible threat of harm, I guess, that would allow standing in this case. So the plaintiffs in this case are medical providers, right? Who have licenses granted to them by the state. And there's no indication in this record anyway, that the licensing authorities have given any assurance that if they would proceed with an abortion under the circumstances prohibited by the act, that they wouldn't face licensing sanctions. So why shouldn't that be enough? Irrespective of this, you know, alleged non-threat of prosecution to allow for standing in this case. Let me address the two different licensing agencies separately, Your Honor. So first, the medical board does have authority and does oversee the medical profession in North Carolina. There's literally nothing in the record with respect to the medical board and what it may or may not do based on some fact pattern in the future. That absence in the record has to fall on plaintiffs since the plaintiffs have the burden of proof here. We just don't know anything about that fact, that possibility in the future. And with respect to the state agency, Department of Health and Human Services, the state did put into the record the affidavit of its representative, Ms. Howell. And she explains, and the statute supports, that the state agency doesn't have any enforcement authority under the criminal code. Its only obligation under that code is to collect kind of basis. So similar to the medical board, Your Honor, there's no suggestion, there's no threat, there's no credible fear that either DHHS or the medical board is about to take action. Can I ask a follow-up on that, Judge Mott? Sure. But on the medical board, and I understand your point, but is there any reason or any suggestion? I mean, you're a state employee as well. That the medical board has ever brought an action against a doctor for violating a state law that didn't result in criminal prosecution? I mean, it would seem to be a shocking idea that the medical board would sort of independently do it. I mean, I think the medical board does it after a prosecution. But are you aware of any instance when the medical board revoked someone's license based on the violation of a state law that the state chose not to prosecute? Your Honor, no. I am not aware of any such thing. I don't think the record contains any information on any such thing. Thank you very much. You've gone a little over your time. Yes, thank you, Your Honor. But I imagine you have some rebuttal time. Thank you. Don? May it please the Court, Genevieve Scott for the Appellees. Under both Supreme Court and Fourth Circuit precedent, this case is straightforward. To establish a credible threat, plaintiffs must allege fears of enforcement that are not imaginary or speculative. In other words, they must show that they are not without some reason to fear enforcement. There is clearly more than an imaginary threat of enforcement here. Before the injunction was in place, the providers complied with the ban and charged away patients with being constitutionally protected from care. That is undisputed. Since the ban was enjoined, the providers have begun providing that care. And under all of the remaining factors considered by this Court, credible threat is clear. The ban's recent amendment to its emergency exception, as well as its increased reporting requirements, make it unreasonable to assume that the statute will not be enforced. And the state concedes that the amendment changed the circumstances under which women can access care after 20 weeks in North Carolina. Or at least I'm having a little trouble hearing you. And they have trouble hearing me, and maybe it's just because we're fragile flowers. But anyway, see if you can get closer to the microphone or talk louder or something. But it was really muted more than too soft. All right. I will speak more clearly. Yes, thank you. Would you like me to begin again? No, I think we're okay. But can I actually, while we're on a break, let me ask you maybe a broader question. So you rely extensively on, you know, American booksellers and Babbitt, the credible threat, you know, well-founded fear. And those cases are obviously First Amendment cases. When we look at the sort of more general Ex parte Young, that requires like an actual threat and an about to commence is the language from Ex parte Young. I get that the Supreme Court has expanded that in the First Amendment context. But can you tell us why, given our language and the Supreme Court's language, we don't look to Ex parte Young's description of a threat as opposed to the sort of somewhat more relaxed First Amendment and American bookseller? Well, this court has, in fact, applied Babbitt and American booksellers, Your Honor, in non-First Amendment context. And I think that a key case I would point you to is the mobile oil case. That was a case in which there had recently been an amendment to a petroleum oil statute. And mobile oil decided that it was going to self-censor or its activity and not engage in activity related to its franchisees based on the fact that the law had been passed. And what this court found was that that had had a chilling effect and that that chilling effect demonstrated that there was a credible threat of prosecution in that case. And in fact, I believe that this court specifically said that the decision in American booksellers applied squarely to that case, because as in both cases and as is the case here, because the law had been recently amended, this court held, as the Supreme Court had, that it would be unreasonable for the plaintiffs to believe that the law would not be enforced against them. The challenge with mobile oil is that it is one that was immediately enacted. And so literally before the executive could enforce it, the suit was brought. And so you don't have this sort of time gap. I mean, the time gap is what I think creates trouble. And I understand your amendment argument. But the amendment argument, just put that to the side for me, because what I'm trying to figure out is why we're applying, given the delay, the sort of more lenient standard of American booksellers and Babbitt, as opposed to the standard from Ex parte Young itself. The standard that is applied by this circuit and the United States Supreme Court in case after case has been made very clear. And that standard is whether or not the threat is imaginary or speculative. And whether the Supreme Court ever, ever said that that's the standard outside the Holder case, that was the standard that was applied in the Second Amendment context. Or excuse me, I believe that I'm saying that correctly, but I would have to go back and double check that. But this court has clearly applied it outside of the First Amendment context in the mobile oil case. And here, it is very clear that even if the ban hadn't been recently amended, there's all of the other factors that this court looks to when considering whether or not there is credible threat of enforcement, way in favor of demonstrating that that threat has been established here. In addition to the fact that the providers were chilled from providing constitutionally protected care to their patients, which they now currently provide, it's also the case that there has never been any open and notorious violation of the law as there was in dueling of the type that would possibly undermine the credible threat that the providers face. And there has been no disavowal from the state. There has been no civil disavowal whatsoever from the medical board. And the district court did not clearly err in finding that statements from Howell and from District Attorney Woodall did not address future enforcement. And one thing I will just correct on the record is I believe that my colleague said that there had been disavowals from both district attorneys. But I believe that since District Attorney Deberry has succeeded District Attorney Echols, the only thing we have in the record for Durham County is an article from the Washington Post that was co-authored by District Attorney Echols in which he makes generalized statements about past parole discretion regarding abortion laws and does not even specifically mention the law at issue here at all. Ms. Scott, can I ask a question about Mr. Wood's argument? He seemed to be suggesting that you were challenging the wrong part of the statute and that because you didn't focus on the part of the statute B that was effectively amended by the your claim fails and the district court was wrong to focus on the statute as a whole. What's your response to that? That is incorrect, your honor. The statute, the way that the statute works is there is a general ban on abortion with two exceptions. One is that an abortion cannot be provided after 20 weeks. And the other exception is that an abortion cannot be provided unless there is a medical emergency. And as the district court correctly held, these operate in tandem. But the effect of these laws together is that there is a ban on abortion in the state of North Carolina until 20 weeks unless a patient meets the medical emergency exception. And the defendants have conceded here that the amendment, and I'm referring to abortion, could be performed after the 20th week of pregnancy. And that is the key fact to understand here is that clearly we have challenged the correct statute because this is the statute that actually has the effect of narrowing access to constitutionally protected care in the state. You agree that the medical, I mean, they're just two separate exceptions. And at week two or at week 39 to invoke the medical exception and justify an abortion based on the medical exception, or at least at week two and week 19 could base it on either of the exceptions. There are independent grounds on which a doctor can perform an abortion without violating the right. Well, your honor, I think that it's correct that if a physician was going to provide an abortion at two weeks, they could look to either exception. That's correct. But if a provider was looking to perform an abortion after the 20th week of pregnancy, they could not look to only one or the other. They would have to look at both to understand that after the 20th week of pregnancy, they could no longer meet the first exception and that therefore it would be illegal for them to perform that abortion unless they meet the second exception. And that is why the laws operate in tandem. And then the district court correctly held that they are part of a unitary scheme where one cannot be understood without the other because one could not make a decision. A physician could not make a decision to provide an abortion after the 20th week without looking to the medical emergency exception to determine whether or not it would be illegal in the state. It's also clear, and I think your honor was correct in saying that in the law, it is clear that the state intends for it to not be moribund and for the ban to continue to be enforced. And indeed, the state conceded that a plaintiff may credible threat by presenting evidence that the challenge statute was recently amended and that a recent amendment to a statute signals the government's wish to enforce the statute. That's the state's opening brief at page 16. Right. But why? I mean, this is back a little bit to just as his point. But what I mean, what we don't have, or at least what I've never seen is a case that says if you amend one law that we should infer from that some legislative intent with respect to a related yet wholly distinct law. I mean, they're related, but it's a different subsection, right? So what? And so are there any cases that have done that that have used an attempt? Just are there any cases? I understand that's your argument, but is there any court that's ever done that? I'm not familiar with any cases under that hypothetical that you just posed, but as the district court correctly held, these are part of a unitary scheme and they operate in tandem and one cannot be understood without the other. Moreover, in addition to the amendment to the emergency exception, other amendments to this law include that there was an amendment to the reporting requirements. So in addition to narrowing the types of procedures that women could access prior to viability, the amended law also requires physicians to provide an ultrasound for every abortion that is performed after 16 weeks and to provide a detailed explanation for every abortion that fits within the medical emergency exception. And the Department of Health has independently hired a physician to review these materials to ensure compliance with the ban. Can I ask a follow-up to Judge Richardson's question? So was your challenge in this case to the statute as a whole or to the most recent amendment in subsection B of the statute? My challenge is to both the ban itself and to the medical emergency exception and to how these laws interact together. You challenged the medical exception? We challenged the underlying 20-week ban and the statute that includes the exception and explained that because of the way that they operate together, they constitute an unconstitutional pre-viability ban on abortion. Where can I, I'm not sure I'm following that, is that in your, where in your complaint, can you point me to the JA? Because I understood your challenge to be to the 20-week ban, not to the other provisions of this law. Yes, your honor. My understanding is that these laws operate in tandem and they operate. I understand that argument, but I just want to understand, did you challenge, maybe I just misunderstood you because it sounded to me like you just said you challenged the ban, the 20-week exception, and the medical exception, where I only thought you challenged the 20-week exception. I believe if I remember correctly, your honor, that we've challenged both the, and I would be happy to provide a supplemental information to this court because I don't have my. I can, I can, I can read it. But if I remember correctly, I believe that what we challenged was each of these aspects of the law. And the reason that we did that was because each of them makes clear that the ban has the effect of preventing the providers from being able to provide abortion after the 20th week. And that was true both before and after the amendment took place. Indeed, the state defended this law for years, including on the merits below. And as the district court found, it's clear that the state's goal is to continue to deter the providers from providing this care. And I believe that our request for relief, your honor, is at JA-29. And what does it say? It's a mystery what it says. Declaratory judgment that criminalizes abortion, and it cites 1444, 1445, and then 1445-1, and it says collectively the 20-week ban. That's right. And so we have challenged 1444, 1445, and 1445-1, A and B. And that is both the underlying ban and the exception. It is unconstitutional as applied to pre-viability abortions. That's correct, your honor. The district court's judgment says that it enjoins 1445-1A only in conjunction with 1444 and 1445. So it seems to be saying what you're saying to us. That's right. The district court wanted to be clear that it was only enjoining the ban and as it existed, but it wasn't enjoining the underlying law. Scott, can I ask a different question with respect to the medical board and the licensing issues? You said that there's no indication in the record that the licensing board would not take action against a medical provider, but your colleague on the other side says that silence should be held against you because you have the burden of showing a credible threat of, in this case, sanction, not prosecution, but civil sanction. So what is your response to that? Well, my response to that is that silence on its own certainly is not a disavowal, right? And in cases where there have not been disavowals, even in the civil context, this court and the Supreme Court have held that that demonstrates or that does not weigh against credible threat. But here specifically, this particular Article III issue was not initially raised by the state. In fact, for the first two years of litigation, they did not say anything about credible threat of enforcement and instead were defending this law on the merits. And it was supplemental briefing from the parties in which it required the state to respond about whether or not there were any disavowals, that the statements that we have received from the state were first entered into the record. And so this represents the totality of the state's response on this point. And in my opinion, I think that the... That seems to have it backwards because the judge actually ordered you to do it. You refused to do it. And then finally, the district court ordered you under penal getting thrown out to do it. And you're blaming the government. The court has ordered you, and you're the one that refused to do it. The point is you had to provide some reason to think, forget disavowal, some reason to think that the medical board might revoke somebody's license for providing a pre-viability abortion. I mean, which seems seemingly unlikely to me. And so in the silence, I'm not sure I'm understanding your argument. Well, the district court did ask us to address this question of credible threat and raised it. And we promptly responded to the court in supplemental briefing, addressing the court's questions and arguing that because of all of the factors here before this court, that we had demonstrated a credible threat. And the district court did not clearly err in finding that all of those factors indeed weigh in plaintiff's favor. The court also required the state to make a statement about disavowal and to indicate its intent on that front. And the statements that we have represent the entirety of their response on that front. So the state medical board has simply remained silent and has not given any indication that they will not exercise their to deprive a physician of his or her license if they violate this law, whether or not the criminal prosecution has ensued. And that alone is sufficient to confer standing in this case. Well, if we go back to Judge Diaz's original question, which was, has there been, why are you worried about the state board? Surely we wouldn't require one of your clients to be sanctioned by the state board in order to get standing. You don't have to violate the law to get standing if there is the credible threat, right? And so I would have thought that would have been your most direct answer. And when you talk about all these factors in answering my colleague, maybe you should go down. I know you talk about, you don't think that the disavowal is sufficient. What other factors do we have? We have your honor, a chilling effect on constitutional rights. We have a recent amendment to the statute. I see that I'm out of time. We have a chilling effect on constitutional rights. We have a recent amendment to the statute that indicates that there has been a credible, that there is a credible threat. There are no notorious violations of the statute that could possibly undercut the credible threat that has been established here. There is no civil disavowal. And the district court did not clearly air in holding that the statements from the district attorney Woodall did not address future enforcement. So for all of those reasons, it is clear that the threat here is not imaginary or speculative. And I respectfully ask that this court uphold the decision of the district court. Okay. My colleagues have no further questions. Thank you very much. Thank you, your honor. Mr. Wood, you have five minutes. Thank you, Judge Motz. I think I just have three points that I'd like to make briefly. First, as to did the complaint allege a cause of action with respect to just exception A, which is the 20-week ban, or did it also attempt to challenge exception B, which is the medical emergency ban? I think it's quite clear that the complaint, paragraph 21, which is in the record at page 24, says both before and after the 2016 amendment, exception A was unconstitutional. So that was not the focus. Further showing on that is the affidavits that the doctors put into the record. It's record page 53 through 56. The doctors put in supporting affidavits in connection with the summary judgment papers. And two of the three doctors don't even mention the medical emergency exception in their declarations. Clearly, it wasn't a focus. And the final point on that is, in the district court's order, this appears in the record at page 976. So after the memorandum opinion, the plaintiff submitted a motion to clarify. And they asked the district judge, would you please, in your injunction, would you clarify that your ruling also applies to exception B, the medical emergency exception? And the district court just shot that down and said, in light of the fact that plaintiffs did not directly challenge 14-45.1B, the court sees no reason to clarify that. So it's quite clear there was, the 20-week ban was the issue. It was never a case about the medical emergency exception. It could have been, but it wasn't. My second point is- Can I interrupt you before you get to your second point? Yes, sir. Is there any relevance in this analysis to the passage and consideration of reviability bans in other states? And if so, what? And if not, why not? Yeah. The district court did note in two places that he noted that other states had been amending their abortion codes and therefore found relevance there. And from that, inferred the state's intention to start prosecuting, if not exception A, some portion of its code. Not necessarily the intent, but the reasonableness of the perceived threat, right? It's not so much about the intent. It's whether the perceived threat of prosecution is credible or reasonable, right? And the fact that other states, nearby states indeed, are enacting new bans lends some credence, don't you think, to the possibility of prosecution under North Carolina's law? I agree with you, Your Honor. I think that is a factor that was appropriate to consider. And I think one could read into it that there is at least political will, legislative will, to do certain things in that arena. But again, to put that against the 45-year history and the disavowals, I think, is the weighing challenge here. So I wouldn't say it's not a factor, but I'd say it's a factor that weighs and has to weigh against the facts in the record. So, Mr. Wood, in this case, the plaintiffs would actually have to wait until an actual prosecution ensued before they could challenge the ban? No, sir. The state doesn't assert that that's the law at all. We completely understand that under Babb and under this Court's holdings, a credible threat of an imminent harm is certainly enough to satisfy injury and facts in Article III standing. So if I misspoke, I apologize. I'm not trying to suggest... No, no. I'm just trying to... Because you're saying, well, it hasn't happened in 30-plus years. And even the notion of adjoining states beginning to express some interest isn't enough. So I'm just wondering what would be enough under these facts? What else would they need? Yeah, it's an excellent question, Your Honor. And it comes down to what does imminence really mean? And in an opinion that Your Honor wrote in 2017, in a case called Beck versus McDonald, you addressed that exact question. Imminence is an elastic concept, but you can't stretch it to the breaking point. And it's got to have meaning. And it's been interpreted that imminence means an injury that must certainly be impending. And the Supreme Court has used words like real and immediate, not speculation, not hypothetical. So when you're talking about something that certainly must be impending, with this avowals and with no history, that speaks directly to that issue, I would say. I hope you're not going to hoist me on my own petard by virtue of my opinion, but I have to go back and take a look at that. Thank you for bringing that up. Do my colleagues have any more questions? I think your time has expired and you went a little over first time around. Thank you both for your arguments. Thank you, Your Honors.
judges: Diana Gribbon Motz, Albert Diaz, Julius N. Richardson